UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DARRELL SCOTT                                                              PLAINTIFF

V.                                                CIVIL ACTION NO. 3:22-CV-33-DPJ-FKB

YOUTH VILLAGES, INC.                                                      DEFENDANT

ORDER

This employment dispute is back before the Court on pro se Plaintiff Darrell Scott's

Motion to Vacate Arbitration Award [15].  While the Court understands that Scott strongly

disagrees with the Arbitrator's decision to dismiss his claims, Scott has not met the high

standards that apply to motions to vacate.  In short, he cannot simply relitigate his claims post-

arbitration; for the reasons stated below, the Court denies his motion.

I.        Factual and Procedural Background

Scott began his employment with Youth Villages in January 2021 as a mental-health

therapist.  Pl.'s Compl. [1-2] ¶ 6.  During the onboarding process, Scott signed a "Dispute

Resolution Policy and Agreement" that covered "all claims arising out of, related to[,] or

connected with [Scott's] employment with Youth Villages."  Dispute Resolution Agreement [3-

2] at 1.

A dispute arose on August 26, 2021, when Scott had an altercation with a client during

which Scott says he was physically threatened.  Pl.'s Compl. [1-2] ¶¶ 22, 24, 31.  The parties

disagree as to the details, but they apparently "agree that there was an angry confrontation."

Arbitration Award [12-2] at 1.  The next day, two supervisors at Youth Villages interviewed

Scott regarding the incident; when he informed them that he intended to press charges, they told

him it was "against company policy."  Compl. [1–2] ¶¶ 49–51.  Youth Villages then placed Scott

on administrative leave, without pay, pending an investigation.  *Id.* ¶ 53.  That investigation

dragged on, and Scott remained on administrative leave as of December 3, 2022, the day he sued

Youth Villages in the Circuit Court of Hinds County, Mississippi.  He asserted claims for

intentional infliction of emotional distress and wrongful termination.  *Id.* at 9–10.

Because Youth Villages is a Tennessee corporation and Scott is a Mississippi citizen,

Youth Villages removed the case on January 26, 2022.  It then filed its motion to compel

arbitration pursuant to the Federal Arbitration Act (FAA), which this Court granted in its March

31, 2022 Order [11].  On September 6, 2022, arbitrator David P. Jaqua (the "Arbitrator") entered

an arbitration award in favor of Youth Villages—all claims were dismissed with prejudice.

Arbitration Award [12-2] at 4.  Not satisfied with this result, Scott filed the instant motion to

vacate the arbitration award [15].  Youth Villages responded in opposition to that motion; Scott

has not replied to Youth Villages' response, and the time to do so has passed.

## II.    Standard

Under the FAA, judicial review of an arbitration award is "extraordinarily narrow."  *21st*

*Fin. Srvs., LLC v. Manchester Fin. Bank*, 747 F.3d 331, 335 (5th Cir. 2014) (quoting *Antwine v.*

*Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990)).  "An award may not be set aside

for a mere mistake of fact or law."  *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397,

401 (5th Cir. 2007), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552

U.S. 576, 584–86 (2008).  "The burden of proof is on the party seeking to vacate the award, and

any doubts or uncertainties must be resolved in favor of upholding it."  *Wanken v. Wanken*, 451

F. App'x 319, 321 (5th Cir. 2011),

III.    Analysis

Title 9 U.S.C. § 10(a) provides "the exclusive grounds for vacatur" of an arbitration

award.  *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009).  "Notably, Section

10(a) does not provide for vacatur of an arbitration award based on the merits of a party's claim."

*Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009).  In other words, this is

not an opportunity for Scott to merely relitigate his claims.  Instead, the statute allows a court to

vacate an arbitration award

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Scott states that the final three grounds apply and then offers a somewhat discursive

recitation of his arguments.  Pl.'s Mot. [15] at 2 (quoting 9 U.S.C. § 10(a)(2)–(4)).  It is not

always easy to tell which arguments address which grounds, and some arguments likely fall

under more than one.  To be clear, the Court has considered all arguments under all three

grounds.  Not all merit discussion, but those that will be mentioned will be addressed under the

provisions where they most naturally fit.

A.      Evident Partiality

Starting with the first ground Scott raises, "[e]vident partiality is 'a stern standard.'"
*Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 545 (5th Cir. 2016) (quoting *Positive
Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 281 (5th Cir. 2007) (en banc)).
"The statutory language . . . seems to require upholding arbitral awards unless bias was clearly
evident in the decisionmaker[]."  *Id.*  Thus, Scott "must produce specific facts from which a
reasonable person would have to conclude that the arbitrator was partial to [Youth Villages]."
*Id.* (quoting *Householder Grp.*, 354 F. App'x at 852).  The "alleged partiality [must be] direct,
definite, and capable of demonstration rather than remote, uncertain, or speculative."  *Id.*
(alteration in original).

While the Court has considered all of Scott's arguments under this heading, none meet
the stern standard for vacating the award based on partiality, and most are better addressed under
the other two grounds Scott cites.  Accordingly, this section will address some of Scott's broader
themes—many of which focus on the Arbitrator's conclusion that his employment was
terminable at will.

Under the at-will employment doctrine, absent limited exceptions or "an employment
contract expressly providing to the contrary, an employee may be discharged at the employer's
will for good reason, bad reason, or no reason at all, excepting only reasons independently
declared legally impermissible."  *Shaw v. Burchfield*, 481 So. 2d 247, 253–54 (Miss. 1985)
(citation omitted).  Here, the Arbitrator correctly found that Scott was an at-will employee
because the applicable handbook stated:

**101 Employment at Will**

You have the right to terminate your employment with Youth Villages at any time for any reason or for no reason at all.  Likewise, Youth Villages also retains this same right to terminate your employment for any reason or for no reason at all, regardless of any other oral or written documents or statements made by any representative of Youth Villages.  This is called employment at will.  No one other than the CEO has authority to alter the at-will employment status, and the CEO may do so only through a written agreement containing his signature.

Handbook [7-6] at 1.

It is unclear whether Scott disagrees with that finding.  *See* Pl.'s Mot. [15] at 6 (seeming to dispute at-will designation).  If he does, then the record evidence supports the Arbitrator's decision.  Scott instead seems to suggest that the Arbitrator exhibited bias by taking an overly broad view of the doctrine.  For example, Scott argues that the at-will employment doctrine applies only to termination decisions and would not, therefore, prevent his claim that he was wrongfully suspended without pay.  Pl.'s Mot. [15] at 6.

Assuming that theory was part of Scott's arbitrated claims, he has not shown that the Arbitrator applied the at-will employment doctrine to it.  Scott asserted two claims in his Complaint, one for wrongful termination and one for intentional infliction of emotional distress.  *See* Compl. [1-2] at 9.  Those were the only claims the Arbitrator addressed.  *See* Arbitration Award [12-2] at 1.  And the wrongful-termination claim was the only one to which the Arbitrator applied the at-will employment doctrine.  *See id.* at 4.  Moreover, even if the Arbitrator applied the at-will employment doctrine to the suspension-without-pay issue, Scott has offered no authority suggesting that Mississippi employers are free to fire at-will employees even for bad cause but face liability if they impose lesser discipline.  This argument fails to demonstrate partiality.

Scott also sees bias in the Arbitrator's alleged failure to require Youth Villages to "prov[e its] case that the Plaintiff was in fact guilty of Abusing and Neglecting Youth A."  Pl.'s

Mot. [15] at 3 (capitalizations unaltered). But because the Arbitrator found that Scott was an at-will employee, Youth Villages was not required to prove the validity of its reasons. Youth Villages could fire Scott "for good reason, bad reason, or no reason at all." *Shaw*, 481 So. 2d at 253–54 (citation omitted).

Scott also disputes the Arbitrator's fact findings and argues that they reflect his partiality toward Youth Villages. *See, e.g.*, Pl.'s Mot. [15] at 8. To the extent those arguments relate to the cause of the termination, those facts are irrelevant because Scott was an at-will employee. *Id.* Moreover, "the Court is not allowed to review the arbitrator's rulings on the weight and credibility of evidence." *Williams v. Cintas Corp.*, No. 3:05-CV-668-P, 2005 WL 8158449, at *4 (N.D. Tex. July 15, 2005), *aff'd*, 169 F. App'x 180 (5th Cir. 2006); *see also Reynolds v. Brown & Root, Inc.*, No. 1:03-CV-545, 2004 WL 3733401, at *1 (E.D. Tex. Dec. 20, 2004*)*, *aff'd*, 170 F. App'x 297 (5th Cir. 2006) ("The fact that the arbitrator weighed the evidence differently than plaintiff does not demonstrate bias.").

In short, none of Scott's arguments—including the ones addressed below and those not included in this Order—meet the "stern standard" for vacating the award based on alleged partiality. *Cooper*, 832 F.3d at 545.

B.      Misconduct or Misbehavior

Moving to the next ground, "[t]o constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006) (quoting *El Dorado Sch. Dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001)). Generally, this means that the Arbitrator "denie[d] a postponement of the hearing or refuse[d] to hear material

evidence." *United Forming, Inc. v. FaulknerUSA, LP*, 350 F. App'x 948, 950 (5th Cir. 2009) (quoting *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 811 (Tex. App. 2008)).

Scott first says "the Arbitrator showed complete indifference to the factual evidence that the Plaintiff presented against the Defendant[']s claim that [he] was terminated due to having been accused of Abusing and Neglecting Youth A during a home visit." Pl.'s Mot. [15] at 2 (capitalizations unaltered). He similarly claims that once the Arbitrator concluded that Scott's employment was at will, "any and all evidence presented by the Plaintiff was mute." *Id.* at 6. These arguments seemingly fit under the misconduct-or-misbehavior ground for vacatur due to a refusal to hear material evidence. But, as stated, Scott's disagreement over the cause of the termination is not relevant under the at-will employment doctrine. *See, e.g.*, *Levy v. Baptist Mem.'l Hosp.-N. Miss.*, No. 3:03-CV-176-P-A, 2005 WL 1221827, at *7 (N.D. Miss. May 23, 2005) (holding that "whether or not such a reason is a 'good' reason is irrelevant since, given the employment-at-will backdrop, the hospital in this case could have fired Levy for no reason, bad reason, or good reason"). Scott's general arguments taking issue with the at-will employment doctrine and its effect on evidence fail to show arbitrator misconduct.

Scott does, however, make a more specific argument that the Arbitrator failed or refused to consider evidence under exceptions to the at-will employment doctrine. Pl.'s Mot. [12] at 7. First, Scott states that the Arbitrator should have credited his evidence under the so-called *McArn* exception. *Id.* (citing *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993)). In *McArn*, the Supreme Court of Mississippi outlined two public policy exceptions to at-will employment that apply when

> (1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; [or where] (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred

7

by the employment at will doctrine from bringing action in tort for damages
against his employer.

*McArn*, 626 So. 2d at 607.

Scott thinks his termination for threatening to press charges against a client falls within

the second exception.  Pl.'s Mot. [15] at 8.  But there is no indication that the Arbitrator

misbehaved by failing to consider Scott's evidence on that point; his award expressly addressed

the *McArn* exception and the facts relevant to it.  Arbitration Award [12-2] at 1–2.  After

correctly summarizing the *McArn* exception under Mississippi law, the Arbitrator concluded that

Scott's "*evidence* fails to create a prima facie case of wrongful termination under either of the

*McArn* exceptions."  *Id.* at 2 (emphasis added).  In other words, the Arbitrator considered but

rejected Scott's factual argument.  While Scott may disagree, he has not shown that the

Arbitrator misbehaved but refusing to consider his evidence.

Next, Scott contends that the Arbitrator failed to credit his "relevant material evidence"

that Youth Villages breached its duty to make a good-faith effort to resolve the dispute.  Pl.'s

Mot. [15] at 9.  This argument presumably flows from another exception to the at-will

employment doctrine found in *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356 (Miss. 1992).  There, the

Mississippi Supreme Court held that handbook language can obligate the employer to "follow its

provisions in reprimanding, suspending or discharging an employee for infractions specifically

covered therein."  *Id.* at 362.

Scott's *Bobbitt* argument fails to show misconduct.  As an initial point, the Arbitrator

noted that the *Bobbitt* exception does not apply when the employer includes a disclaimer stating

that the employment remains at will.  Arbitration Award [12-2] at 2 (citing *Byrd v. Imperial

Palace of Miss.*, 807 So. 2d 433 (Miss. 2001)).  He was correct; "if the employer has explicitly

characterized an employment relationship as at will, an employee handbook outlining

8

disciplinary procedures does not modify the relationship." *Johnson v. City of Shelby*, 642 F.

App'x 380, 384 (5th Cir. 2016) (citing *Hartle v. Packard Elec., a Div. of Gen. Motors Corp.*, 626

So. 2d 106, 109 (Miss. 1993)).

The Arbitrator then considered the evidence and concluded that Youth Villages had

expressly preserved Scott's at-will employment status; he was again correct.  The "General

Employment" section of the disputed handbook states that no "oral or written documents or

statements" would "alter the at-will employment status."  Handbook [7-6] at 1.  Similarly, the

Dispute Resolution Policy expressly "acknowledges that [Scott's] employment is at-will and that

[the] Agreement does not change such at-will status."  Dispute Resolution Agreement [12-3] at

4.  In addition, the Arbitrator included what may have been an alternative holding that it was

Scott and not Youth Villages who skipped good-faith efforts of resolution.  *Id.* at 2–3.  In short,

Scott has not shown that the Arbitrator misbehaved by refusing to consider the evidence.

C.      Exceeded Powers

Finally, Scott says the Arbitrator exceeded his powers.  Pl.'s Mot. [15] at 2.  Courts "will

sustain an arbitration award as long as the arbitrator's decision 'draws its essence' from the

contract—even if [courts] disagree with the arbitrator's interpretation of the contract."  *Cooper*,

832 F.3d at 545 (quoting *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797,

802 (5th Cir. 2013)).  "The question is whether the arbitrator's award was so unfounded in

reason and fact, so unconnected with the wording and purpose of the [contract] as to manifest an

infidelity to the obligation of an arbitrator."  *Id.*  "[A]n arbitrator has not exceeded his powers

unless he has utterly contorted the evident purpose and intent of the parties—the 'essence' of the

contract."  *Id.* (quoting *Timegate Studios, Inc.*, 713 F.3d at 802–03).

Scott contends that if he was an at-will employee, then the arbitration provision was a nullity and there was no duty to arbitrate after he was fired.  Pl.'s Mot. [15] at 3.  According to Scott:  "No Plaintiff would ever win or even be allowed to bring forth a lawsuit against their employer if the Employer is able to use the Employee At-Will clause and have employees sign binding agreements that require mandatory arbitrations for certain disputes beyond 'termination.'"  *Id.* at 4 (capitalizations unaltered).  Scott therefore believes that once the Arbitrator determined that Scott's employment was at will, he exceed his power and should have returned the case to federal court.  *Id.* at 5.  This Court has already rejected that argument because the duty to arbitrate did not end with the termination from employment.  *See* Order [11] at 4.  Scott agreed to at-will employment and signed a document that read:  "This Agreement shall be in full force and effect during the entire period of Employee's employment with Youth Villages, *and shall continue to be in full force and effect after Employee's employment with Youth Villages has ended*."  Dispute Resolution Agreement [3-2] at 2 (emphasis added).[1]

Scott also says the Arbitrator exceeded his powers by ignoring a "Supreme Court [of Mississippi] ruling pertaining to Company Handbook policy and procedures that override[s] the [a]t-[w]ill clause[s]."  Pl.'s Mot. [15] at 12; *see also id.* at 3–4; Dispute-Resolution Policy [12-3] at 3.  Here again, Scott seems to rely on *Bobbitt*, though the argument is a little different.  This time, Scott suggests that Youth Villages' failure to engage in good faith to resolve the dispute

---

[1] Absent exceptions, at-will employees probably won't succeed on wrongful-termination claims in arbitration, but that does not render arbitration provisions a nullity.  As Scott notes, the parties agreed to arbitrate claims brought under federal employment statutes like Title VII of the Civil Rights Act of 1964.  Pl.'s Mot. [15] at 4.  Thus, if the employer violates federal law, then arbitration would offer the terminated employee a viable means for redress—it would not be a nullity.  Significantly though, the duty to arbitrate applies to "all claims arising out of, related to[,] or connected with [Scott's] employment with Youth Villages," Dispute Resolution Agreement [3-2] at 1, not just the meritorious ones.

rendered the case non-arbitrable—thus the Arbitrator exceeded his authority by arbitrating it. Scott presented that same argument to this Court when he opposed Youth Villages' motion to compel arbitration; the Court rejected it because "procedural arbitrability" issues are left to arbitrator.  Order [11] at 4 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556 (1964)).  The Arbitrator then rejected the argument on the merits.  *See* Arbitration Award [12-2] at 1, 3.  The Arbitrator did not exceed his power.

IV.     Conclusion

        The Court has considered all arguments; those not discussed would not change this result. For the reasons stated, Plaintiff's Motion to Vacate Arbitration Award [15] is denied.  The case remains closed.

        **SO ORDERED AND ADJUDGED** this the 16th day of December, 2022.

                                        s/ *Daniel P. Jordan III*
                                        CHIEF UNITED STATES DISTRICT JUDGE